UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|   |   |
|---|---|
| IN THE MATTER OF THE ADMINISTRATIVE INSPECTION <br><br> IN RE: Eastport Family Pharmacy <br> 34 Middle Street, <br> Eastport, ME 04631 | ) ) ) ) ) ) ) ) ) Case No. 1:26-mj-00038-JCN |

## AFFIDAVIT FOR AN ADMINISTRATIVE INSPECTION WARRANT

The undersigned, Emma J. Hinnigan, being duly sworn under oath, deposes and states as follows:

1. I am a duly appointed Diversion Investigator with the Drug Enforcement Administration ("DEA"), United States Department of Justice, assigned to the New England Field Division, Portland Resident Office, in South Portland, Maine. The mission of the DEA's Office of Diversion Control is to prevent, detect, and investigate the diversion of controlled pharmaceuticals and listed chemicals from legitimate sources while ensuring an adequate and uninterrupted supply for legitimate medical, commercial, and scientific needs.

2. I have been employed as a Diversion Investigator for approximately 13 years. As a Diversion Investigator, I conduct regulatory, civil, and criminal investigations of DEA registrants related to their controlled substances activities. During my career as a Diversion Investigator, I have participated in many investigations of DEA registrants relative to their improper prescribing, dispensing, distributing, and record keeping of controlled substances. I have received at least 12 weeks of training concerning these types of investigations. I am knowledgeable of the laws, regulations and procedures pertinent to investigations of the diversion of controlled substances to the illicit market as well as the techniques employed by

1

registrants to divert controlled substances. My knowledge of the facts in this investigation is based on my first-hand experience and/or information that has been reported to me by other investigators or which I have obtained from reviewing documents. I have not set forth each and every fact that I have learned during the course of my investigation, only those that I believe are necessary and sufficient to support the issuance of the requested Administrative Inspection Warrant.

3. Pursuant to Sections 878(a)(2) and 880(b)(1), (2), and (3) of Title 21 of the United States Code, and Section 3, Appendix to Subpart R, Title 28, Code of Federal Regulations, I am authorized to execute Administrative Inspection Warrants for the purpose of inspecting controlled premises of persons and firms registered under the Controlled Substances Act (21 U.S.C. § 801, *et seq.*, ("CSA"))[1] in order to inspect, copy, and verify the correctness of all records, reports and other documents required to be kept or made under the control and enforcement provisions of 21 U.S.C. §§ 801, *et seq.*, and 21 C.F.R. §§ 1310, *et seq.* In addition to such records inspection, I am authorized pursuant to 21 U.S.C. § 880(b)(3)(B) to inspect, within reasonable limits and in a reasonable manner, controlled premises and all pertinent equipment, finished and unfinished drugs, listed chemicals, and other substances or materials, containers, and labeling found therein, and—except with respect to financial data, sales data other than shipment data, and pricing data— all other things therein, including records, files, papers, processes, controls, and facilities, appropriate for verification of the records, reports, and documents required to be kept or made under the control and enforcement provisions of 21 U.S.C. §§ 801, *et seq.*

4. Upon proper oath or affirmation showing probable cause, a United States Magistrate Judge may issue an Administrative Inspection Warrant pursuant to 21 U.S.C. § 880.

---

[1] Also referred to as the Comprehensive Drug Abuse Prevention Control Act of 1970.

*See* 21 U.S.C. § 880(d)(1). "Probable cause" means "a valid public interest in the effective enforcement of [the control and enforcement provisions of the Controlled Substances Act] or regulations thereunder sufficient to justify administrative inspections of the area, premises, building, or conveyance or contents thereof, in the circumstances specified in the application for the warrant." *Id.*

5. "Probable cause in the criminal law sense is not required to support the issuance of an administrative warrant" pursuant to 21 U.S.C. § 880(d). *United States v. Prendergast*, 585 F.2d 69, 70 (3d Cir. 1978); *see also United States v. Goldfine*, 538 F.2d 815, 819 (9th Cir. 1976) ("The administrative need for and the public interest in inspection continue to provide justification apart from the obtaining of evidence of crime."). Rather, probable cause to support an administrative search warrant is established generally upon a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular (establishment)." *Camara v. Mun. Court*, 387 U.S. 523, 538 (1967); *United States v. Osborne*, 512 F. Supp. 413, 414 (E.D. Tenn. 1980) ("Within the meaning of 21 U.S.C. § 880(d)(1), probable cause, sufficient to justify the issuance of an inspection-warrant, may be established by the mere fact that a substantial period of time has passed since the most recent inspection of the particular establishment."), *aff'd* 657 F.2d 270 (6th Cir. 1980).

6. Based on the facts set forth as follows, I aver that there is probable cause under 21 U.S.C. § 880(d) for the requested Administrative Inspection Warrant.

7. I make this affidavit in support of the DEA's application for an Administrative Inspection Warrant for the controlled premises of Eastport Family Pharmacy ("EFP"), which is located at 34 Middle Street, Eastport, ME 04631, to gather documentation, conduct interviews, and collect evidence in order to fulfill the scope of the inspection. EFP is registered with the

DEA under the provisions of the CSA and has been assigned the following DEA number and registrant category, which will be the subject of the inspection:

| FE4459447 | Retail Pharmacy |

8. EFP's registrant address has been 34 Middle Street, Eastport, ME 04631, since April 9, 2014. Therefore, 34 Middle Street, Eastport, ME 04631, is a controlled premises within the meaning of 21 U.S.C. § 880(a) and 21 C.F.R. § 1316.02(c).

9. EFP's owner is Benjamin Okafor who also owns and is the Pharmacist-in-Charge ("PIC") of Machias Family Pharmacy ("MFP"), 194 Main Street, Machias, ME 04654. Ihezie Sampson Obi ("Obi") and Victor Keka Mubang ("Mubang") are employed as pharmacists by EFP and MFP. Obi is EFP's PIC.

10. EFP is required to keep records of all regulated transactions of controlled substances received, sold, dispensed, lost, stolen, delivered, or otherwise disposed of pursuant to 21 U.S.C. § 827 and 21 C.F.R. § 1304, *et seq.*, on its controlled premises. Such records must be maintained for two years pursuant to 21 C.F.R. § 1304.04(a).

11. Based on my review of DEA records, EFP has purchased controlled substances in Schedules II and III in the past two years. Accordingly, EFP is obligated to maintain records of those purchases and make them available for inspection.

12. Based on my review of records obtained from the Maine Prescription Monitoring Program ("PMP"), EFP has dispensed controlled substances in Schedules II through V in the past two years. Accordingly, EFP is obligated to maintain dispensing records and make them available for inspection.

13. Pursuant to 21 C.F.R. § 1316.09(a)(4), my review of DEA records indicates that the DEA inspected EFP on December 14, 2022. EFP has not been inspected since that time. The

2022 inspection revealed recordkeeping violations of the CSA and significant controlled substance accountability discrepancies. For example, EFP's controlled substance records were not readily retrievable at the registered location in violation of 21 C.F.R. § 1304.04(h)(3). In addition, when produced to DEA, EFP's records were missing information required by 21 C.F.R. § 1304.11(a), 21 C.F.R. § 1304.11(c) and 21 C.F.R. § 1304.11(e)(1)(iii)(C).

14. Information obtained from the Maine Board of Pharmacy (the "Board") revealed the following history of disciplinary action against EFP, MFP, Okafor, Obi, and Mubang:

    a. In 2016, EFP entered into a consent agreement with the Board for operating a retail pharmacy without being licensed by the Board in violation of 32 M.R.S. § 13731(1).

    b. In 2016, Okafor entered into a consent agreement with the Board after he filled a prescription for Oxycontin that was over 90-days old in violation of Board rules. Oxycontin (oxycodone) is a Schedule II controlled substance.

    c. In 2018, Mubang received a 30-day suspension and was placed on a 3-year period of probation related to his conduct as the PIC of Machias Friendly Pharmacy. Mubang violated multiple Board rules in connection with the pharmacy's permanent closure. Mubang failed to appropriately notify the Board, the public, and DEA. The latter is also a violation of 21 C.F.R. § 1301.52(d). Upon the pharmacy's closure, Mubang failed to take a complete closing inventory of controlled substances and properly document their disposition. This violates Board rules and 21 C.F.R. § 1301.52(e)(1). Mubang also failed to properly document the disposition of the pharmacy's prescription

legend drugs, prescription files and patient profiles. In addition, the pharmacy's security cameras failed to meet Board requirements.

d. In 2018, Mubang entered into a consent agreement with the Board after he failed to notify the Board that his Delaware nursing license had been subject to discipline.

e. In 2019, Okafor received a 30-day suspension and was placed on a 10-year period of probation after the Board found that he committed fraud, deceit, and misrepresentation by altering prescription labels and pharmacy records to conceal his improper dispensing of the Schedule V controlled substance Lyrica (pregabalin).

f. In 2021, Obi entered into a consent agreement with the Board pursuant to which he was censured, fined and required to complete professional education. This consent agreement resolved multiple complaints involving the following facts:

   i. When checking a prescription issued for 23 alprazolam tablets, Obi did not detect that the quantity dispensed was 28. Alprazolam is a schedule IV controlled substance.

   ii. When checking a prescription for Simvastatin (cholesterol reducer), Obi did not detect that the medication dispensed was actually Citalopram (antidepressant).

   iii. Obi mistakenly entered an electronic prescription for 15 lorazepam tablets with no refills into EFP's system as a prescription with 36 refills. This prescription was dispensed to the patient 11 times. Obi was responsible for checking each time this prescription was dispensed.

Lorazepam is a Schedule IV controlled substance. Pursuant to 21 C.F.R. § 1306.22(a), no prescription for a controlled substance in Schedule III or IV may be refilled more than five times.

g. In February 2025, Obi entered into a consent agreement with the Board after admitting to making a misrepresentation in connection with services rendered while working as a pharmacist. Obi was issued a warning, fined, and required to complete additional professional education.

h. In January 2026, Obi entered into a consent agreement with the Board pursuant to which Obi's pharmacist license was suspended for 60 days and his ability to serve as a PIC was suspended for 6 months. In addition, his pharmacist license was placed on a 3-year period of probation. The consent agreement resulted from the following three complaints:

   i. Complaint filed by healthcare provider alleged that a patient who was prescribed amitriptyline (antidepressant medication) was instead dispensed amlopodine (blood pressure medication) by MFP. Obi was the pharmacist working at the time of the error. Obi blamed the error on the pharmacy technician. Obi admitted that he did not conduct a final check of the prescription before it was dispensed to the patient.

   ii. Complaint filed by healthcare provider alleged that EFP misfilled a insulin prescription for Humalog 50/50 with Humalog 100. Obi blamed the pharmacy technician for confusing the medication. Obi admitted that he failed to conduct a final check on a portion of the prescription fill.

  iii. Complaint filed by healthcare provider alleged that MFP filled and dispensed by mail a prescription for Adderall to a patient who was not prescribed the medication. Adderall (dextroamphetamine/amphetamine) is a Schedule II controlled substance. Obi responded that the computer system auto-populated the wrong patient name because the patient names were similar. The error was not caught. Obi claims that he caught the error when performing a final check and set the prescription aside for reversal. However, he forgot about it and never reversed the misfilled prescription. Obi blamed the pharmacy technician for picking up the prescription and sending it out.

15. The DEA has received intelligence that alleges that Okafor is engaging in inappropriate sexual activity with pharmacy staff in exchange for drugs. DEA is currently investigating this allegation further.

16. In my experience as a Diversion Investigator, registrants that have a history of controlled substance act violations, accountability discrepancies, history of falsification of records, and a lengthy disciplinary history with their respective licensing board, are more prone to engaging in serious, systemic violations of Title 21 of the United States Code and Code of Federal Regulations with respect to prescription and recordkeeping regulations than other registrants.

17. Based on the facts outlined above, I therefore believe there is probable cause sufficient to justify the requested Administrative Inspection Warrant pertaining to EFP according to the circumstances specified herein.

18. The DEA will conduct the inspection during regular business hours; the investigator's credentials will be presented to the registrant; the inspection will begin as soon as practicable after issuance of the Administrative Inspection Warrant and will be completed with reasonable promptness; and the Administrative Inspection Warrant will be returned within 10 days.

19. The inspection will extend to the inspection and copying of records, reports, inventories, prescriptions, invoices, and other documents, including electronically-stored information, required to be kept, and the inspection of all other things therein including records, files, video surveillance footage, papers, and electronically-stored information appropriate for the verification of the records, reports, and documents required to be kept under the Controlled Substances Act. The inspection will also extend to the inspection, auditing, and inventorying of stocks of controlled substances, and, if necessary and applicable, records and/or all controlled substances will be seized. The inspection will also include taking photographs and video recordings in order to document security violations, document physical evidence, and to document other potential violations of Title 21 of the United States Code and Code of Federal Regulations that could contribute to diversion of controlled substances.

20. The investigator conducting the inspection will be accompanied by one or more investigators who are employees of the United States Department of Justice authorized to conduct administrative inspections. These individuals will be assisted by personnel assigned to DEA's digital evidence laboratory who have expertise in forensically copying electronic records.

21. A return of the Administrative Inspection Warrant will be made to this Court upon the completion of the inspection.

22. I have verified and have knowledge of the facts stated in this affidavit, which are true to the best of his knowledge.

Dated at Portland, Maine, this 2nd day of February, 2026

*Emma Jane Hinnigan*
_____
Emma J. Hinnigan
Diversion Investigator
Drug Enforcement Administration

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Feb 04 2026

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title